UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 2 5 2011 ★

BROOKLYN OFFICE

Haile Dabreo; Garry Council; and Roy McMillan,

Plaintiffs,

-against-

The City of New York; Mario Cedillo, in his individual capacity; Robert Critelli, in his individual capacity; Jon Kenny, in his individual capacity; Eulogio Peguero, in his individual capacity; and Joe Pulgarin, in his individual capacity,

Defendants

CV 11 - 1473

ECF CASE

COMPLAINT AND DEMAND FOR JURY TRIAL

COGAN, J.

## PRELIMINARY STATEMENT

1.   This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 for the Defendants' commissions of acts under color of law in violation of the Plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

## JURISDICTION

2.   This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

3.   Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

## VENUE

4.   Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving rise to the claim occurred in the Eastern District of New York.

## JURY DEMAND

5. The Plaintiffs demand a trial by jury on each and every one of their claims as pled herein.

## PARTIES

6. The Plaintiffs, HAILE DABREO, GARRY COUNCIL and ROY MCMILLAN are residents of New York City.

7. Defendant CITY OF NEW YORK ("City") is a municipal corporation within the State of New York.

8. Defendant NEW YORK CITY POLICE DEPARTMENT (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all times relevant hereto, defendant NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9. Defendants MARIO CEDILLO, ROBERT CRITELLI, JON KENNY, EULOGIO PEGUERO and JOE PULGARIN (collectively, the "Individual Defendants") were police officers employed by the NYPD who were at all relevant times herein acting in their capacity as agents, servants, and employees of the City.

10. The Individual Defendants are sued in their individual capacities.

11. At all times relevant herein, defendant Critelli held the rank of sergeant and was acting as the supervisor of defendants Cedillo, Kenny, Peguero and Pulgarin.

12. At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The Individual Defendants were acting for and on behalf of the City at all times relevant herein with the power and authority vested in them as officers, agents and employees of the City and incidental to the lawful pursuit of their duties as officers, employees and agents of the City.

## STATEMENT OF FACTS

13. In the early evening of January 12, 2009, plaintiffs Haile Dabreo, Garry Council and Roy McMillan, along with Christopher Cipriani, were running to catch the B46 bus on Utica Avenue in Brooklyn.

14. The plaintiffs had just got off the subway after taking it from the Bowling Green station in Manhattan to the Crown Heights-Utica Avenue station in Brooklyn. At Bowling Green, Mr. Dabreo had purchased a six-dollar pay-per-ride MetroCard, good for three rides and three transfers, which he used to let himself, Mr. Cipriani and Mr. McMillan on to the subway. Mr. Council had an unlimited MetroCard which he used to let himself on. As a result, the plaintiffs and Mr. Cipriani each had valid transfers that they could use to get on the bus.

15. Just as the plaintiffs neared the rear of the bus, they were stopped by Officers Cedillo, Kenny, Peguero, and Pulgarin, who asked them for identification. Although the plaintiffs had done absolutely nothing wrong, they provided identification to the officers.

16. After "running" the plaintiffs' names, and at the direction of Sergeant Critelli, Officers Cedillo, Peguero, and Pulgarin, respectively, handcuffed and arrested Messrs. Dabreo, Council and McMillan. Mr. Cipriani was given a summons by Officer Kenny.

17. The plaintiffs were then placed in a police van and driven to the 71st Precinct.

18. After the van was parked in front of the precinct, while the plaintiffs were still seated inside, Officers Cedillo, Kenny, Peguero and Pulgarin, had a conversation, audible to the plaintiffs, in which they discussed fabricating the facts in their paperwork, since none of the plaintiffs actually got on the bus.

19. The officers decided that they would charge each of the plaintiffs with attempting to enter a different bus at a different time.

20. At the 71st Precinct, Mr. Dabreo, Mr. Council and Mr. McMillan were searched a second time before being placed in a holding cell.

21. None of the plaintiffs ever entered the bus.

22. That notwithstanding, the plaintiffs were each individually charged with one count of Theft of Services, in violation of New York Penal Law § 165.15(3).

23. Mr. Dabreo was charged under docket number 2009KN003160 with getting on a B12 bus at 6:37 PM at the northeast corner of Utica Avenue and Empire Boulevard. The arrest report identifies the bus number as 6815.

24. Mr. Council was charged under docket number 2009KN003148 with getting on bus number 5113, a B12 bus, at 6:20 PM at the northeast corner of Utica Avenue and Empire Boulevard.

25. Mr. McMillan was charged under docket number 2009KN003159 with getting on bus number 3934, a B46 bus, at 6:00 PM at the northwest corner of Utica Avenue and Empire

Boulevard.

26. On January 13, 2009, after spending the night in police custody, the plaintiffs were separately arraigned in Kings County Criminal Court and each released on his own recognizance.

27. On March 10, 2009, the plaintiffs' criminal cases were consolidated for trial.

28. On July 29, 2009, the People dismiss the charges of Theft of Services (Penal Law § 165.15(3)) and filed a superseding information charging the plaintiffs with Trespass (Penal Law § 140.05).

29. In the superseding information, the allegations were altered, alleging that the plaintiffs all entered bus number 3934, a B46 bus, together at 6:00 PM.

30. Officer Pulgarin swore to the truth of the new allegations in the superceding information.

31. After awaiting trial for more than a year, a trial was finally commenced on January 19, 2010 before the Honorable Alex Jeong of the Criminal Court of the City of New York, County of Kings.

32. At the conclusion of the trial, Judge Jeong acquitted the plaintiffs the charges against them.

33. When asked during the cross-examination if he is told to arrest a certain of people, Officer Pulgarin, admitted that he is told to arrest "about eight" people a month.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against Individual NYPD Defendants

34. All other paragraphs herein are incorporated by reference as though fully set forth.

35. By arresting, detaining and charging plaintiffs, the Individual Defendants engaged under color of law in the violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to, *inter alia*, be free from unreasonable searches and seizures, false arrest and imprisonment.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York

36. All other paragraphs herein are incorporated by reference as though fully set forth.

37. Municipal liability for the violations of Plaintiffs' Fourth Amendment rights rests upon the grounds set forth below.

38. At all times material to this complaint, the defendant City, acting through defendant NYPD and the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

39. At all times material to this complaint, the defendant City, acting through defendant NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the Individual Defendants' supervisors of their need to train, screen, supervise or discipline said defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

40. At all times material to this Complaint, the defendant City, acting through the NYPD had a *de facto* policy, custom and/or practice of imposing arrest quotas on its officers generally and on the Individual Defendants specifically. The existence of this unconstitutional policy, custom and/or practice may be inferred, *inter alia*, from:

a) the following news reports:

*i*) Rocco Parascandola, *NYPD Lt. Janice Williams Captured on Tape Pushing for More Busts, but Brass Says There's No Quotas*, March 3 2011;

*ii*) Oren Yaniv, *Court Rules That Cops Do Use Quotas; Woman Injured in 2006 Arrest Settles for $75,000*, New York Daily News, February 19, 2011;

*iii*) Orev Yaniv, *Capt. Links Arrests to Evaluation of Cops, Lawyer Alleges in Lawsuit*, New York Daily News, February 15, 2011;

*iv*) Al Baker and Liz Robbins, *A Quota by Any Other Name*, New York Times, January 13, 2011;

*v*) Rocco Parascandola, *Deputy Chief Michael Marino Threatens Cops at 79th Precinct Who Want to Go on Summons Strike*, New York Daily News, December 15, 2010;

*vi*) James Fanelli, *Cops at Brooklyn's Crime-ridden 77th Precinct Told to Meet Quotas for Moving Violations, Memos Say*, New York Daily News, November 8, 2010

*vii*) Al Baker and Ray Rivera, *In Secret Tape, New York Police Press Ticket Quotas*, New York Times, September 10, 2010;

*viii*) Kareem Fahim, *Police in Brooklyn Used Illegal Ticket Quotas, Arbitrator Decides*, January 20, 2006; and

b) the testimony of defendant Officer Pulgarin in the Plaintiffs' criminal trial.

WHEREFORE, the plaintiff requests that this Court:

1. Assume jurisdiction over this matter;

2. Award compensatory and punitive damages to the plaintiffs against the defendants, jointly and severally;

3. Award the plaintiffs reasonable costs, disbursements and attorney's fees; and

4. Grant any other relief the court deems appropriate.

Dated: New York, New York
March 22, 2011

Respectfully submitted,

Darius Wadia, L.L.C.
By: Darius Wadia, Bar number DW8679
Attorney for Plaintiff
233 Broadway, Suite 2208
New York, New York 10279
dwadia@wadialaw.com
(212) 233-1212